UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**RANDALL SWERINGEN, DAVID WILSON
and JOHN DOE(S),**
                                **Plaintiffs,**

                **-v-**                                 **1:05-CV-428
                                                                 (NAM/DRH)**

**NEW YORK STATE DISPUTE RESOLUTION
ASSOCIATION (NYSDRA),**

                                **Defendant.**
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Randall Sweringen
Plaintiff, *pro se*

David Wilson
Plaintiff, *pro se*

Hiscock & Barclay, LLP
Mark W. Blanchfield, Esq., of counsel
50 Beaver Street
Albany, New York 12207
Attorney for Defendant

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

      Defendant New York State Dispute Resolution Association ("NYSDRA") moves (Dkt. No. 67) for summary judgment dismissing the action. As set forth below, the Court grants summary judgment and dismisses the action in its entirety.

### BACKGROUND

**NYSDRA and IMAP**

      The following factual background is undisputed unless otherwise indicated. NYSDRA is a not-for-profit professional membership organization that provides dispute resolution services.

In 2004, the Roman Catholic Diocese of Albany ("the Diocese") hired retired New York Court of Appeals Judge Howard A. Levine to develop the Independent Mediation Assistance Program ("IMAP") and serve as its system administrator. The stated purpose of IMAP was to provide assistance to people who as minors had been sexually abused by clergy of the Diocese. Judge Levine contracted with NYSDRA to provide dispute resolution services for IMAP for a fee. Judge Levine's law firm, Whiteman Osterman and Hanna, LLP, paid NYSDRA for the services and was reimbursed by the Diocese.

The IMAP process is described by Charlotte Carter, a NYSDRA employee and Intake Coordinator for IMAP, in her affidavit on this motion, as follows:

> The IMAP program afforded victims an opportunity to take part in one or more mediation sessions with a Diocese representative and a mediator, who would facilitate discussions and assist the parties in reaching a mutually agreeable result.
> ***
> By the terms of the program, neither the victim nor the Diocese was obligated to mediate with regard to any particular case.
> ***
> Once the IMAP program was announced and was operating, victims and their representatives would typically contact me through e-mail and by telephone to inquire about the program. I would, in turn, supply these people with a brochure about the program and/or refer them to the IMAP website, as well as answer questions about the program.
>
> If the victim expressed an interest in mediation, I would gather information ...[about the claim from various sources].
> ***
> The IMAP System Administrator, Howard Levine, also not a NYSDRA employee or contractor, would review the ... [information] to make a preliminary determination whether the matter would be suitable for mediation.
>
> Thereafter, the Diocese could still decide whether to mediate a particular case or not. If the Diocese decided not to mediate a particular case, I understand the matter could be resubmitted to the System Administrator for further information gathering and review, and the System Administrator

-2-

could resubmit the matter to the Diocese for their agreement or not to mediate. While the input of the System Administrator was given weight, the Diocese could still refuse to mediate in any particular case.

I understand that at one point before IMAP was announced, it was proposed that the program be open to victims who were 21 or younger at the time of the abuse, without a showing of special circumstances. By the time of the IMAP announcement, the Diocese had determined to direct the program primarily toward victims who were under the age of 18 at the time of the abuse. This age cut-off could be waived for victims who were between 18 and 21 at the time of the abuse, provided the age of majority was 21 at
the time of the abuse or there was clinical evidence of a victim's special vulnerability.

Once IMAP was announced, NYSDRA's role was to gather and transmit information with respect to victims expressing interest in mediation, to provide mediators, to provide non-lawyer advocates if requested, to coordinate mediation sessions between the parties, to track each matter until the mediation was complete, and to compile data regarding the program. Though I did not conduct mediations, the other tasks were handled primarily by me.

No one at NYSDRA provided any counseling or other therapeutic or pastoral assistance to the victims. No one at NYSDRA determined who would be eligible to participate in IMAP, determined which cases the Diocese would mediate, nor determined what the victims would receive as a result.

No one at NYSDRA determined the type and content of the advertising or other publicity that would be used to disseminate information about IMAP – all that was taken care of by the Diocese.

Upon the announcement of the IMAP program on September 22, 2004, it was publicly stated that the program would be funded by the Diocese and that there would be limits on the resources made available to restore the victims.

I am aware of a flow chart distributed at the press conference which made it
clear that the program was directed primarily towards those abused while under 18; those abused between ages 18 and 21 would have to demonstrate clinical evidence of special vulnerability or show that the age of majority was 21 at the time of the abuse.

-3-

(Paragraph numbering and citations to record omitted.)

**The plaintiffs**

The amended complaint (Dkt. No. 20) claims that plaintiff Randall Sweringen, who was abused by a priest in the mid-1980's when he was 18, 19 and 20 years old, "has been participating in, been involved in and has signed up for" IMAP beginning in October 2004. The amended complaint further states that plaintiff David Wilson, a victim of childhood sexual abuse by a priest, "has investigated and looked into" IMAP. Claims are also asserted on behalf of the John Doe plaintiffs; however, no individuals have been substituted for the John Doe plaintiffs.

**Sweringen's contacts with IMAP**

The initial press release on September 22, 2004 and virtually all subsequent promotional materials regarding IMAP stated that the program was primarily directed towards victims who were minors - that is, under 18 - when the abuse occurred.[1] In one of her first e-mails to Sweringen in early November 2004, IMAP's Intake Coordinator, Charlotte Carter, told him that "IMAP is intended to help those who, as minors under 18, were abused by clergy or deacons of the Albany Diocese." Sweringen requested that his case be considered anyway, despite the fact that he was not a minor when he was abused. On November 16, 2004, Carter sent Sweringen an informational brochure and directed him to the IMAP website, which Sweringen subsequently acknowledged reviewing. In correspondence on November 16, 2004 and on other occasions Carter informed Sweringen that the Diocese had discretion to determine whether to participate in mediation with him or any other victim. After a series of communications with Sweringen, Carter

---

[1] The sole exception in the record is an article in the Troy Record on September 23, 2004 stating that the program was available to victims who were abused when they were under 21.

-4-

informed him on January 12, 2005 that the Diocese did not consider his case to be within the program guidelines because of his age at the time of the abuse. She added: "I raised that with Judge Levine's office, and I am waiting for a response from them." On January 23, 2005, Sweringen wrote to Carter that he had decided not to pursue the matter with NYSDRA any longer and that all further contact with IMAP and the Diocese would be handled by his lawyer. There was no further contact between NYSDRA and Sweringen. No mediation session ever took place between him and a representative of the Diocese, nor did he enter into any resolution of his claims. He did not waive any rights or release any claims he might have against the Diocese. On April 7, 2005, plaintiffs commenced this action.

**Amended complaint**

The claims in the amended complaint include the following: that NYSDRA is involved in a conflict of interest inasmuch as it is funded by the Diocese and thus is not independent and neutral as advertised; that, in arranging for mediation of cases under the IMAP program, NYSDRA is violating its own policy statement that mediation "is not an option" in child abuse cases; that NYSDRA falsely advised Sweringen that NYSDRA "was permitted to be involved in the program and that the program was appropriately vetted by the defendant NYSDRA and did not involve fraud, deception or a conflict of interest"; that NYSDRA has unfairly and unjustly granted to its representatives discretionary authority to determine what matters proceed to mediation and what matters are delayed or do not go to mediation; and that NYSDRA's employees do not have formal training in working with victims of sexual abuse.

In the first cause of action, the amended complaint seeks injunctive relief directing NYSDRA to terminate the IMAP program and/or compelling NYSDRA to conform to its public

and web site representations.  Plaintiffs also allege fraud (second cause of action); deceptive practices and false advertising in violation of New York General Business Law §§ 349 and 350 (third cause of action); breach of oral contract (fourth cause of action); negligence (fifth cause of action); and breach of fiduciary duty (sixth cause of action).

With respect to damages, the "Wherefore" clause of the amended complaint requests injunctive and other equitable relief, money damages, and civil penalties and attorney's fees under the General Business Law.  In his supplemental reply affidavit on this motion, Sweringen claims he sustained psychological and physical damages such as anxiety, inability to sleep, exhaustion and depression, and he further claims monetary damages on the ground that "persons who resolved their matters using NYSDRA received settlements from $25,000 to $75,000."

**Motions**

On NYSDRA's motion (Dkt. No. 26), the Court dismissed the second cause of action (fraud) pursuant to Fed. R. Civ. P. 12(b)(6).  *Sweringen v. New York State Dispute Resolution Ass'n*, 2007 WL 2403197, *4-6 (N.D.N.Y. Aug. 17, 2007) (Dkt. No. 35).  NYSDRA's subsequent motion for summary judgment (Dkt. No. 48) was denied without prejudice to renewal.  *Sweringen v. New York State Dispute Resolution Ass'n*, 2009 WL 2971091 (N.D.N.Y. Sept. 16, 2009) (Dkt. No. 66).  NYSDRA's renewed summary judgment motion (Dkt. No. 67) is presently before the Court.  As explained below, the motion is granted.

## DISCUSSION

**Applicable law**

NYSDRA now moves for summary judgment.  A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in his favor, determines that the movant has met its burden, the burden shifts to the nonmovant to adduce evidence establishing the existence of a genuine issue of material fact requiring a trial. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). A genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323-24. Where the party opposing summary judgment is proceeding *pro se*, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted).[2]

**Plaintiff Wilson**

The amended complaint states that Wilson "is eligible for the program as he has presented as a victim of sexual abuse when he was a minor." Charlotte Carter, NYSDRA's Intake Coordinator, states in her affidavit that she never communicated with plaintiff David Wilson and that he never participated in an IMAP mediation. Wilson submits no papers in opposition to the motion. Viewing all evidence and drawing all inferences in favor of Wilson, and giving him

---

[2] On January 12, 2009, plaintiffs' former lawyer, John A. Aretakis, was suspended from practicing law for one year (Dkt. No. 62). Thereafter, both Wilson and Sweringen informed the Court that they were proceeding *pro se* (Dkt. Nos. 64, 65). On September 18, 2009, counsel for NYSDRA served Wilson and Sweringen by mail with the motion papers and a notice to *pro se* litigants of the consequences of failing to respond to a summary judgment motion (Dkt. No. 67). Much of the activity in this lawsuit occurred while Wilson and Sweringen were represented, and most of the papers submitted by Sweringen in opposition to this motion were prepared by his former lawyer. Nevertheless, the Court treats them as *pro se* plaintiffs.

every benefit of his *pro se* status, the Court finds no basis on which a rational jury could find in his favor. Summary judgment is granted dismissing Wilson's claims with prejudice.

**The John Doe plaintiffs**

No individual has been substituted on behalf of the John Doe plaintiffs. All claims on their behalf are dismissed without prejudice.

**Injunction**

As discussed below, the action lacks merit. The Court grants summary judgment dismissing the first cause of action for injunctive relief.[3]

**Fraud**

The second cause of action for fraud has already been dismissed on the ground that plaintiffs failed adequately to plead fraudulent intent. *Sweringen v. New York State Dispute Resolution Ass'n*, 2007 WL 2403197, *4-6 (N.D.N.Y. Aug. 17, 2007).[4]

**New York General Business Law ("GBL") §§ 349 and 350**

The third cause of action alleges violations of GBL §§ 349 and 350.[5] GBL § 349(a)

---

[3] In any event, it is undisputed that the IMAP program has ended and NYSDRA is no longer involved in coordinating mediations between victims and the Diocese; thus, no purpose could be served by an injunction directing NYSDRA to cease mediating claims involving childhood sexual abuse by Albany Diocese priests or compelling NYSDRA to conform to its public and web site representations regarding IMAP.

[4] Moreover, the fraud cause of action is subject to dismissal on summary judgment because there is no evidence that NYSDRA made false statements upon which Sweringen reasonably relied to his detriment. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291, n.8 (2d Cir. 2006) (stating that a fraud plaintiff must prove by clear and convincing evidence a material misrepresentation or omission of fact, made with knowledge of its falsity and with intent to defraud, and reasonable reliance by plaintiff to his detriment).

[5] The amended complaint also cites New York State Executive Law §§ 62 and 63, which are inapplicable.

provides: "Deceptive acts or practices in the conduct of any business, trade or commerce ... are hereby declared unlawful." GBL § 349 (h) creates a private cause of action for "any person who has been injured by reason of any violation of this section[.]" To state a section 349 claim, a plaintiff must prove three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000); *accord Maurizio v. Goldsmith*, 230 F.3d 518, 521-22 (2d Cir. 2000). Deceptive acts are those acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio*, 230 F.3d at 521 (citations omitted); *accord Solomon v. Bell Atlantic Corp.*, 777 N.Y.S.2d 50, 55 (1st Dep't 2004) (deceptive acts are those "likely to mislead a reasonable consumer in the plaintiff's circumstances").

GBL § 350 prohibits false advertising "in the conduct of any business, trade or commerce or in the furnishing of any service[.]" GBL § 350-a(1) defines false advertising as advertising that is "misleading in a material respect." As with section 349, a plaintiff asserting a section 350 claim must prove that the defendant made material misrepresentations which are likely to mislead a reasonable consumer under the circumstances, that the plaintiff was deceived, and that as a result the plaintiff was injured. *See Maurizio*, 230 F.3d at 522; *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 476 (E.D.N.Y. 2009); *Solomon*, 777 N.Y.S.2d at 55.

The amended complaint alleges that NYSDRA representatives falsely stated at a press conference and in publications that "[t]he mediators are not an advocate for one party over another, but support each other in using the process to speak the truth, seek understanding and ask for what is wanted to begin or further the healing process" and otherwise falsely represented that

the mediators were neutral and that IMAP was an "independent" program. The amended complaint further avers that NYSDRA concealed that it "is and was unable to involve itself, or mediate childhood sexual abuse cases or child abuse, or 'other serious and complex issues.'" According to the amended complaint:

> The fraudulent program involving the defendant NYSDRA is not a gratuitous program, but one which deals in the resolution of legal claims with the execution of settlement funds, releases, confidentiality agreements and other such legal agreements attendant to such legal claims.
>
> The defendant NYSDRA acts in, or has acted in concert with its principal the Albany Diocese in speaking for, advocating for or encouraging persons to become involved with the fraudulent and deceptive program.

(Paragraph numbering omitted.) Similarly, in his deposition, Sweringen stated that "the primary misrepresentation was that they were independent and impartial in their mediation process. The other misrepresentation I feel was that they were ... eligible, professional and trained mediators to deal with issues of sexual abuse, especially sexual abuse of minors." In his motion papers, he also complains that NYSDRA deceptively represented that the program was open to victims who were under 21, instead of under 18, when the abuse occurred. He further complains that NYSDRA misrepresented its "ability" to conduct the IMAP program, because NYSDRA's web page describing its dispute resolution services in general terms cautioned that mediation is "not an option" in cases of child abuse.

   Here, as explained below, Sweringen cannot prevail on his section 349 and 350 claims, because no rational jury could find that the communications of which he complains were likely to mislead a reasonable consumer under the circumstances. Nor could a rational jury find that these communications caused Sweringen injury. Therefore, the Court does not reach the question of whether the actions of which plaintiff complains were consumer-oriented as required by section

-10-

349. *See Jaufman v. Levine*, 2007 WL 2891987, *9-10 (N.D.N.Y. September 28, 2007).

In reviewing the communications of which Sweringen complains, the Court notes that the September 22, 2004 press release and press conference regarding IMAP, and articles appearing in local newspapers the following day, disclose that Judge Levine designed the program at the request of the Diocese to provide assistance to people who as minors were sexually abused by a current or former priest or deacon of the Diocese; that Judge Levine was to act as system administrator of IMAP; that the system administrator may determine that an applicant is not eligible to participate; that the Diocese had established a fund of $5 million to provide assistance to victims; that the Diocese would pay the administrative costs of IMAP; and that Judge Levine had contracted with NYSDRA to retain mediators, investigators, advocates, and an intake coordinator. The IMAP brochure contains essentially the same information, as does a "flow chart" distributed at the September 22, 2004 press conference. The flow chart further discloses that, if the system administrator decides the preliminary suitability of a case for mediation, the case is then referred to the Diocesan Review Board "for consideration and response of willingness to participate[.]" Similarly, at his September 22, 2004 press conference, Judge Levine explained that after a claim was investigated the matter "will be turned back to [the system administrator] and also to the Diocese Review Board for a decision by the Review Board as to whether or not the Diocese is agreeable ... to participate in the mediation." Further, the IMAP website (as of November 7, 2004) limits eligibility to anyone sexually abused as a minor; states that the program was designed by Judge Levine, senior counsel to Whiteman, Osterman and Hanna, LLP; and sets forth the names and credentials of the eleven mediators (including Carter) whom NYSDRA had selected and trained to handle the IMAP cases.

-11-

The record also includes numerous e-mail and fax communications between Sweringen and Carter from November 2004 through January 2005. These communications establish that beginning in November 2004 Carter consistently informed Sweringen that Judge Levine designed and administered the IMAP program at the request of the Diocese; that the program was "intended to help those who, as minors under 18, were abused by clergy or deacons of the Albany Diocese"; that additional information was available on the IMAP website; that mediation is a voluntary process for all participants including the Diocese; that Judge Levine might recommend that the Diocese mediate a particular case but could not compel it to do so; that the program uses "independent mediators as neutrals who help people who want to use this process to negotiate with a representative of the Diocese"; and that Sweringen's case was not within the program guidelines because he was not under 18 when the abuse occurred.

As such, the record demonstrates that the matters upon which Sweringen alleges he was misled were actually disclosed to him, including the relationships among the Diocese, IMAP and NYSDRA,[6] the nature of mediation under IMAP, and the fact that the program was designed for those who were abused when under 18.[7] There is no evidence that NYSDRA provided contrary

---

[6] Sweringen complains that NYSDRA and IMAP were not "independent" as represented and that Carter was not an "independent mediator." In support of this contention, Sweringen points out that Carter consulted with the Diocese regarding Sweringen's eligibility for IMAP and that she knew that Judge Levine discussed Sweringen's eligibility with the Bishop of the Diocese. In view of the nature of the IMAP process and NYSDRA's role as described by the brochure, website, and other disclosures, such communications are not improper or deceptive. In addition, these communications did not take place within the context of a mediation session and thus have no bearing on Carter's qualifications or conduct as a mediator, nor is there any evidence that the IMAP mediators were not wholly independent and neutral when mediating. Finally, in view of the specific information provided to the public regarding NYSDRA and IMAP and their relationship with the Diocese, no reasonable consumer could have been misled by NYSDRA's use of the term "independent" in its publications.

[7] The record clearly demonstrates that Sweringen knew that the program was designed to assist
(continued...)

-12-

or misleading information. Viewing the evidence in the light most favorable to Sweringen and drawing all inferences in his favor, the Court concludes that no rational jury could find these communications likely to mislead a reasonable consumer under the circumstances.

As for whether Sweringen can prove any cognizable injury caused by the alleged misrepresentations, the Court notes that he voluntarily applied to the IMAP program; that about a week after the program was initiated, he learned from Carter that he was not eligible because he was not a minor when the abuse occurred; that all subsequent communications confirmed IMAP's age limitation; and that Sweringen requested that his case be considered anyway. He was repeatedly informed that the Diocese had the discretion to decide whether to participate in the mediation of any particular case. No mediation session ever took place between him and a representative of the Diocese, nor did he enter into any resolution of his claims, waive any rights, or release any claims he might have against the Diocese.[8] Thus, even accepting that his alleged psychological and physical injuries (such as anxiety, inability to sleep, and depression) resulted from his interactions with NYSDRA, there is no evidence that they resulted from any deceptive or

---

[7](...continued)
those who were abused when they were under 18. Although an article appearing in the Troy Record on September 23, 2004 stated that the program was available to victims who were abused when they were under 21, all other information in the record consistently states that the program was directed towards victims who were minors when the abuse occurred. The flow chart provided at the September 22, 2004 press conference noted that the systems administrator may recommend waiver of the under-18 limitation in certain circumstances. In an e-mail sent to Terry Rodrigues, a representative of the Diocese, Sweringen acknowledged that on September 30, 2004, he called IMAP and spoke with Charlotte Carter, who "seemed to indicate that after the announcement of September 23 the age of minors was re-defined to only cover those under the age of 18"; Sweringen added that he hoped his case would be considered anyway. In one of her first e-mails to Sweringen in November 2004, Carter stated that "IMAP is intended to help those who, as minors under 18, were abused by clergy or deacons of the Albany Diocese."

[8] Sweringen was born in 1965. Thus, any lawsuit on his claims would be time-barred.

improper conduct by NYSDRA.[9]  Moreover, by virtue of the nature of the program, which was fully disclosed to Sweringen, the Diocese had no obligation to mediate with him or to grant him a monetary settlement.

The Court has reviewed the entire record and finds that the other issues raised by Sweringen in support of his claim lack merit.  NYSDRA's statement that mediation "is not an option in cases of domestic violence, child abuse, or other serious and complex issues," when read in context, could not lead a reasonable consumer to believe that NYSDRA was not qualified to run IMAP.  In any event, Sweringen cannot have been injured by this statement, inasmuch as he was not a child when he was abused, nor did he actually participate in mediation.  In addition, no rational jury could find that NYSDRA misrepresented the qualifications of its Intake Coordinator Charlotte Carter, or that Sweringen sustained any injury whatsoever resulting from the fact that Carter possessed a law degree.  Viewing the evidence and all reasonable inferences most favorably to Sweringen, no rational jury could find in his favor on his GBL §§ 349 and 350 claims.  Summary judgment is awarded dismissing the third cause of action.

**Oral contract**

The fourth cause of action sounds in breach of contract.  To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent, and intent to be bound.  *See Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 427 (2d Cir. 2004).  To establish a

---

[9] The expert reports submitted by Sweringen do not aid him in proving damages or any other element of his claims.  Among other deficiencies, the witnesses fail to establish that they have relevant specialized knowledge; that they are qualified to give evidence as experts on the topics upon which their opinions are offered; or that their testimony is otherwise admissible under section 702 of the Federal Rules of Evidence.  Further, in many respects, the reports are subjective, are based on hearsay, offer legal conclusions, and express views on issues that jurors can understand without expert assistance.  Moreover, the opinions expressed are largely based on the assumption – rejected by this Court as a matter of law – that NYSDRA engaged in deceptive conduct.

breach of contract, plaintiff must prove: the existence of a contract; plaintiff's performance of the contract; defendant's breach of the contract; and damages. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000). Where, as here, there is no signed contract, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506-07 (2d Cir. 2009).

In moving for summary judgment dismissing Sweringen's breach of contract claim, NYSDRA argues that Sweringen cannot prove the existence of an agreement. It is undisputed that there is no signed contract; however, Sweringen contends that the press release, newspaper accounts, IMAP website, and his conversations and correspondence with NYSDRA representatives "formed the basis for an oral contract, and said communications consisted of the material terms of the contract."

The amended complaint claims that NYSDRA "covenanted to the plaintiffs and victims of abuse that they were able to be involved in the program and that same had been properly vetted when in fact it was not properly vetted and the program was not able to be administered or involved in by the defendant NYSDRA"; that NYSDRA also covenanted that NYSDRA "would not be involved in a program if it involved a conflict of interest, which it clearly does"; that NYSDRA and its "principals, agents and attorneys have unfettered and unilateral discretion implementing and administering the program, and this is manifestly unfair, unjust, deceptive, undisclosed and indicative that a conflict of interest exists"; that since the program "is fraudulent, deceptive and has a conflict of interest, the defendant NYSDRA breached its contract with the plaintiffs"; that NYSDRA also breached the contract by failing to remove the offending priest

from the ministry; that Sweringen was damaged "by engaging in the program initiated by the defendant NYSDRA and its principals, and then having nothing happen that was promised by the defendant and their agents"; and that the consideration given by plaintiff is that he "took no other actions to advance his claim" and "refrained from and did not act to put out negative publicity against the defendant and its agents[.]" In his supplemental reply affidavit, which is generally consistent with the amended complaint, Sweringen describes the consideration he provided as follows: "The consideration for the oral contract was that I did not sue the Church. I reduced and lowered my public criticisms of the Diocese, and I did not use an attorney with my extensive and difficult interactions with NYSDRA."

There is no basis in the record to imply an agreement as alleged by Sweringen. The publicly-disseminated information demonstrates as a matter of law that NYSDRA disclosed the role of the Diocese. There is no evidence that NYSDRA promised Sweringen that the Diocese would mediate with him, that Sweringen was entitled to any relief, or that the offending priest would be removed from the ministry.[10] Moreover, apart from the lack of evidence that NYSDRA made the alleged promises, there is no evidence that it made any such promises as consideration for any particular performance by Sweringen. Likewise, while Sweringen may have refrained from suing or criticizing the Church, there is no evidence of any agreement between him and NYSDRA that he would do these things as consideration for NYSDRA's performance. Nothing in the record supports the existence of consideration, mutual assent, or an intent to be bound.

Nor is there any evidence that would permit a jury to find that NYSDRA breached its

---

[10] One of IMAP's publications stated: "A priest who abused a minor will be removed from the ministry[.]" This was a general statement made to the public, not a promise made to Sweringen as consideration for a promised performance on his part. In any event, Sweringen was not a minor when the abuse took place.

-16-

alleged obligations. There is no evidence that NYSDRA was not "able to be involved in the program," that the program had not been "properly vetted," that there was an undisclosed conflict of interest, or that NYSDRA otherwise breached any promise to Sweringen. Finally, there is no basis for an award of damages for any alleged breach of contract. The monetary loss alleged by Sweringen is wholly speculative. In addition, it has long been the law in New York that – except in circumstances not relevant here – there is no right of recovery for mental distress resulting from a breach of contract. *See Wehringer v. Standard Sec. Life Ins. Co. of N.Y.*, 57 N.Y.2d 757, 759 (1982). Viewing the evidence and all reasonable inferences most favorably to Sweringen, the Court concludes that no reasonable jury could find in his favor on the breach of contract claim. Summary judgment is granted dismissing the fourth cause of action.

**Negligence**

The fifth cause of action sounds in negligence. The elements of a negligence cause of action are: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon ex rel. Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027 (1985). The amended complaint alleges:

> The defendant NYSDRA, having instituted and set out a program which involved the plaintiffs had a duty to act reasonably, and pursuant to its own rules, regulations, bylaws, guidelines, policies and relevant statutory law.
>
> The plaintiff RANDALL SWERINGEN signed up for and engaged in the process called IMAP by the defendant NYSDRA and its principals and agents.
>
> The defendants therefore had a duty that ran to the plaintiff SWERINGEN and that duty stemmed from relationship[s] and dealings by and between the parties.
>
> The defendant NYSDRA breached its duty of care and proximately caused damages to the plaintiff RANDALL SWERINGEN that were reasonably

>foreseeable.
>
>The defendants' own breach of their own rules, regulations, policies, bylaws and guidelines is evidence of the defendant's negligence.
>
>The defendant NYSDRA has otherwise acted carelessly and with a wanton disregard to the plaintiffs.
>
>The defendant's actions have proximately caused the plaintiffs damages.

(Paragraph numbering omitted.) The answers to interrogatories describe NYSDRA's negligent conduct as its "delay" and "lack of knowledge of the issues surrounding victims of abuse."[11] In his deposition Sweringen describes NYSDRA's negligent conduct as: failing to disclose that Carter had a law degree; being funded by the Diocese; and failing to have staff properly trained to deal with sexual abuse victims.

There is no basis upon which to find that any conduct on the part of NYSDRA amounted to a breach of duty to Sweringen. The amended complaint does not articulate any duties undertaken by NYSDRA except, possibly, to run the IMAP program as it was described in the brochures and other literature. There is no evidence that NYSDRA breached any such duty. In particular, there is no evidence that NYSDRA's staff was not properly trained to carry out the responsibilities they undertook to perform. To the extent that it may be said that NYSDRA undertook a duty to disclose the nature and limitations of IMAP to potential participants, there is no evidence that it failed to do so. Nor is there competent evidence of any applicable standard which NYSDRA failed to meet. Sweringen's efforts to create a standard through his expert reports are unavailing; the experts have not established that they have specialized knowledge

---

[11] Sweringen's answers to interrogatories also refer to the fact that the funds available to compensate victims were limited to $5 million. This sum was fully disclosed and, in any event, was established by the Diocese, not NYSDRA.

-18-

regarding this issue or that their testimony on this issue is otherwise admissible under section 702 of the Federal Rules of Evidence. There is no other basis upon which a reasonable jury could find that NYSDRA breached a duty to Sweringen. NYSDRA is awarded summary judgment dismissing the negligence cause of action.

**Fiduciary duty**

The sixth cause of action alleges breach of fiduciary duty. As the Second Circuit explains:

> [Under] New York law ... a fiduciary relationship embraces not only those the law has long adopted – such as trustee and beneficiary – but also more informal relationships where it can be readily seen that one party reasonably trusted another. Examples of such informal fiduciary relationships found in the writings of scholarly commentators include priest and parishioner, bank and depositor, majority and minority stockholder, and close friends or family members.

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150-51 (2d Cir. 1993) (citations omitted). Nothing in this record would permit a reasonable jury to find that NYSDRA owed Sweringen a fiduciary duty.

## CONCLUSION

The Court has considered all other issues raised herein. Viewing the evidence most favorably to Sweringen, drawing all reasonable inferences in his favor, and interpreting his papers to raise the strongest arguments that they suggest, the Court holds that NYSDRA has demonstrated its entitlement to judgment as a matter of law and that Sweringen has failed to raise a genuine issue of material fact. NYSDRA's motion for summary judgment is granted with prejudice as to Sweringen and Wilson, and without prejudice as to the John Doe plaintiffs.

It is therefore

ORDERED that defendant's motion (Dkt. No. 67) for summary judgment is granted; and

it is further

    ORDERED that the action is dismissed in its entirety.

    IT IS SO ORDERED.

February 16, 2010
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge